## EX PARTE C. R. WILLIAMS.

No. 16567.   Delivered January 10, 1934.
Rehearing Denied February 14, 1934.
Reported in 67 S. W. (2d) 865.

The opinion states the case.

*Thomas B. Ridgell,* of Breckenridge, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Relator was tried in the district court of Webb County, Texas, and convicted of passing a forged instrument, his punishment being assessed at three years in the penitentiary.

Notice of appeal to this court was given and the trial court fixed his bond pending appeal at two thousand dollars. Relator tendered a bond in legal form with H. G. Tankersley and J. J. Williams (not related to relator) as sureties. The district judge and sheriff declined to approve the bond. Relator sued out a writ of habeas corpus before said district judge, and the hearing upon the habeas corpus proceeding was had on the 16th day of December, 1933. After the hearing the judge and sheriff again refused to approve the bond, and relator was remanded to the sheriff of Webb County, where he is now confined in jail. From the order remanding him and refusing to approve the bond relator appeals.

The bond was executed on the 10th day of December, 1933. Appended to the bond is the affidavit of Tankersley stating

that he lives in Tarrant County, Texas, and is the owner of certain property described in the affidavit, designating therein which is his homestead, and placing his estimate of value on the several pieces of property, and concluding with the following statement: "That the property above listed, exclusive of my homestead exemption, is reasonably worth the sum of $9,375.00 and that same is free from incumbrance and liens and that there are no delinquent taxes due on any of said property." Williams' affidavit is also appended to the bond stating that he also lived in Tarrant County, Texas, and listed property which he owned, designated that part claimed as a homestead and giving his valuation on all property separately as to each tract and concluding with the following statement: "That all of the above described land is reasonably worth the sum of $40.00 per acre and that the 441 acres, exclusive of my homestead, is of the value of $17,640.00 and that there are no delinquent taxes due on any of the above mentioned property." Also attached to the bond is the certificate of the sheriff of Tarrant County to the effect that the sureties are each good and solvent and that he knows them to be worth the amount stated in their affidavits and that he considers the bond good and would approve it if presented to him. To the same effect appears the certificate of the Honorable Criminal District Judge of Tarrant County. Also attached to the bond is a list of property rendered by the sureties for taxes in January, 1933, with the valuation placed upon the same for tax rendition purposes, and while much lower than the valuation placed upon the property in the affidavits heretofore referred to, shows a margin over the amount of this bond and the one in Uvalde County for relator made by the same sureties.

From the testimony given by the trial judge and the sheriff it is clear that they were not satisfied with the bond presented, both expressing the opinion that bondsmen whom they knew personally and of whose property they had personal knowledge would be much more satisfactory. The care exercised by the officers is to be commended in view of the fact that relator had forfeited an appearance bond in which sureties had made affidavit that they were worth much more than the sureties on the present bond claimed, but an execution issued on the final forfeiture judgment was returned unexecuted on the ground that no property could be found, although the sheriff making such return had certified that the appearance bond was good. The officers in Webb County also had information that a similar experience had been suffered by the court in Uvalde County where the bond of appellant had been forfeited and was not

collectible. Other information not necessary to elaborate here had come to the officers whose duty it was to approve the instant bond which justified extreme care in the premises. In declining to approve the bond the learned Judge J. F. Mullally appends thereto the following reasons: "It has come to my knowledge from a reliable source that this same defendant is indicted for a felony in Uvalde County and that he has executed a bond for the coming term of court in that county with J. J. Williams and H. G. Tankersley of Fort Worth, Texas, as sureties, and that while in Uvalde County the said Williams confided to another person that it was his intention to give the same sureties on other bonds for offenses in other parts of the State of Texas. I note that Judge Geo. E. Hosey, of the Criminal District Court of Tarrant County has stated that he considered this a good bond and that if offered to him he would approve it. While I have every reason to believe that Judge Hosey's certificate is in every way worthy of credit, yet I feel positive that he does not know how many cases there are pending against this man and in how many different counties he has offered these men as sureties and I do not believe that he would recommend it if he had known the extent of the criminal litigation in which this applicant is involved and the number of different places this defendant has offered and expects to offer these same sureties." J. C. Martin, the sheriff of Webb County, appends to the bond his reasons for declining to approve it, as follows: "As sheriff of Webb County I have received the same information that Hon. J. F. Mullally alleges as his reasons for refusing to approve said bond. I also know on reliable information that this same defendant gave an appearance bond in Uvalde County, that the bond was forfeited and the state was unable to collect said bond. I also know that this same defendant gave a bond in this county in this same case, that the bond was forfeited and that the state was unable to collect said bond. I know that there are other charges against this same defendant in other counties of Texas. I have in my possession the finger print record of this defendant. For the above reasons I insist on sureties who are known to me or whose property is within my personal knowledge sufficient to justify my approval of the bond. I refuse to be bound by the opinion of others who may not possess the same information that I have."

The learned trial judge was interrogated by attorneys for appellant regarding the proposed bondsmen, and was asked if appellant could satisfy the court that they owned the property claimed by them in their affidavits, and that it was of the value claimed, would he approve the bond. The court replied, in sub-

stance, that he would have to know something about how the sureties paid their debts, and if he found their record in that respect to be good he probably would approve it, but as he did not know regarding that matter he would not approve the bond. It may be that when the court expressed the opinion that under the circumstances the debt-paying record of the sureties would have some weight with him he had in mind article 279, C. C. P., which seems applicable here, and which reads as follows: "To test the sufficiency of the security offered to any recognizance or bail bond, unless the court or officer taking the same is fully satisfied as to its sufficiency, the following oath shall be made in writing and subscribed by the sureties: 'I, do swear that I am worth, in my own right, at least the sum of (here insert the amount in which the surety is bound), after deducting from my property all that which is exempt by the Constitution and laws of the State from forced sale, and after the payment of all my debts of every description, whether individual or security debts, and after satisfying all incumbrances upon my property which are known to me; that I reside in * * * county, and have property in this State liable to execution worth said amount or more. * * *.'"

Article 280, C. C. P., reads as follows: "Such affidavit shall not be conclusive as to the sufficiency of the security; and, if the court or officer taking the recognizance or bail bond is not fully satisfied as to the sufficiency of the security offered, further evidence shall be required before approving the same."

In the absence of the oath set out in said article 279 or testimony under oath from the sureties themselves to the effect that they were worth at least the amount of the present bond after deducting all exemptions "and after the payment of all debts whether individual or security debts" we think the officers charged with passing upon the bond cannot be held to have abused their discretion in declining to approve it. The affidavit of the sureties heretofore referred to does not comply with the statute in question, and there is no statement in the record from the proposed sureties regarding their indebtedness one way or the other. See Ex parte Williams, 116 Texas Crim. Rep., 125, 32 S. W. (2d) 839.

The conclusion should not be drawn from anything which has been said in this opinion that officers may arbitrarily decline to approve a bond because the sureties are not "local" men of whom and their property the officers have personal knowledge. The right to go at liberty on good and sufficient bail has many times been held to be a valuable right of which an accused should not arbitrarily be deprived. To furnish local

bondsmen would ofttimes be a hardship and an impossibility, to require which would be unreasonable.

For the reasons stated, the judgment remanding relator is affirmed.

*Affirmed.*